**UNITED STATES DISTRICT COURT**
**FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 9:19-cv-81069-WPD

MATA CHORWADI, INC. d/b/a
HOMING INN, KIRIT SHAH,
individually, and DIPIKA SHAH,
individually,

      Plaintiffs,

v.

CITY OF BOYNTON BEACH and
GREGORY CAFERO, in his
individual and Official capacities,

      Defendants.
_____/

**DEFENDANT, CITY OF BOYNTON BEACH MOTION TO DISMISS PLAINTIFFS'**
**COMPLAINT AND PETITION FOR DECLARATORY JUDGMENT AND**
**PRELIMINARY INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW**

    COMES NOW the Defendant, City of Boynton Beach ("City"), by and through its

undersigned counsel, and files this Motion to Dismiss the Plaintiffs' Verified Complaint and

Petition for Declaratory Judgment and Preliminary Injunction (DE 1) pursuant to Fed. R. Civ. P.

12(b)(6) and Rule 8 and, in support thereof states as follows:

## I.   Introduction

    The Plaintiffs have filed a three count Complaint attempting to assert an action related to

the City's enforcement of a Nuisance Abatement Agreement that the named Plaintiffs entered

into with the City under the City's Chronic Nuisance Property Code, Article VIII (hereinafter

"Code").

    The Code was enacted to address and reduce nuisance activities and/or nuisance

conditions that disrupt the quality of life for City residents, and repeatedly occur at properties.

Sec. 15-111(Exhibit A, DE 1-2).  The purpose of the Code was to allow the City to work with property owners to address the negative results caused by chronic nuisances.  (Exhibit A, DE 1-2).  The Code sets forth twenty-six categories of chronic nuisance activities including activities such as noise control; prostitution; dangerous dogs trespass; disorderly intoxication; and gang activity. Sec.115-112 (Exhibit A, DE 1-2).  The Code also identifies as a nuisance activity two (2) or more calls for service within a period of thirty (30) calendar days to assist an individual who displays the symptoms of an overdose of a controlled substance. Sec. 15-112(d)(26). (Exhibit A, DE 1-2).

 On December 10, 2017, December 30, 2017, December 31, 2017, January 1, 2018, January 11, 2018, January 16, 2018, January 20, 2018, January 31, 2018, February 2, 2018, March 18, 2018, March 20, 2018, and April 6, 2018, the Boynton Beach Police department received emergency phone calls related to overdoses of a controlled substance from guests at the Plaintiffs' property located at 2821 S. Federal Highway, Boynton Beach, Florida 33435. (Exhibit B, DE 1-3).

On July 13, 2018, the City sent the Plaintiffs a Declaration of Chronic Nuisance and Notice of Chronic Nuisance Violation letter, notifying them that their property had been declared a Chronic Nuisance Pursuant to the Code.  (Exhibit B, DE 1-3).  On December 18, 2018, Plaintiffs' counsel, on behalf of her clients, signed the Nuisance Abatement Agreement and wrote on the Agreement that it "was signed under duress, and my clients do not waive their right to appeal and/or any right to subject the City Ordinance to judicial review as it applies to my clients." (Exhibit D, DE 1-5).  On December 26, 2018, Plaintiffs' attorney signed the Nuisance Abatement Agreement without additional language. (Exhibit E, DE 1-6). This Nuisance Abatement Agreement required the Plaintiffs to post no trespassing signs; provide additional

lighting on the property; to trim and maintain shrubs in accordance with City standards; and to provide additional security cameras. (Exhibit B, DE 1-3)

Section 15-116(a) of the Code provides for an administrative process when there is a violation of a Nuisance Abatement Agreement.  Section 15-116(a) provides that the City may prosecute its declaration of chronic nuisance at a hearing before the City's Special Magistrate. (Exhibit A, DE 1-2).  Code Section 15-117 states that a "property owner or the City may appeal a final order of Special Magistrate to the circuit court of Palm Beach County." (Exhibit A, DE 1-2). On May 2, 2019, the Special Magistrate upheld the City's Declaration of Chronic Nuisance on Plaintiffs' property.  (Exhibit F, DE 1-7).  The Special Magistrate Order finds that the Plaintiffs did not satisfy the provisions of the Agreement by failing to cure the Chronic Nuisance conditions on the property, including installing proper signage, complying with the City's lighting standards, and installing cameras on the property.  (Exhibit F, DE 1-7).  On May 31, 2019, the Plaintiffs filed a Notice of Appeal of the Special Magistrate's Order with the Circuit Court of Palm Beach County.  On July 29, 2019, the Plaintiffs filed this Complaint and Petition for Declaratory Judgment and Preliminary Injunction.  On August 7, 2019, the Plaintiffs filed a Motion to Stay the Appeal of the Special Magistrate's Order in the Circuit Court pending this Court's ruling.  On August 26, 2019 the Circuit Court denied the Plaintiff's Motion to Stay the State Court proceedings due to the filing of this federal action.

The Plaintiffs allege in the Complaint that the enforcement of this Code violates the First Amendment of the United States Constitution and Article I, Section 4 and 5 of the Florida Constitution; violates the Fourteenth Amendment Procedural Due Process Clause and "Florida equivalent"; violates the Fourteenth Amendment Equal Protection Clause and its "Florida equivalent."(Paragraph 22-23, DE 1). Plaintiffs seek injunctive and declaratory relief,

compensatory and punitive damages, damages incurred for loss of business reputation and relationships, attorneys' fees and costs.  (Paragraph 21, DE 1).

The Plaintiffs' Complaint should be dismissed on several grounds. The Complaint fails to meet the pleading requirements of the Federal Rules. The Plaintiffs lack standing to assert any claims on behalf of an unidentified group of persons not a party to this action, only identified as "hotel guests" in the Complaint. The Plaintiffs also lack standing on their own as the Code specifically excludes emergency calls from the property owners from the defined nuisance calls for the purposes of the Code. These claims are also not ripe as the Plaintiffs have not completed the administrative process and the claims are speculative as to any injury that may occur in the future.  The Plaintiffs' alleged damages from the enforcement of the Code are also conjectural and hypothetical.  Further, the Plaintiffs have failed to state a cause of action in Counts I, II and III as fully argued in this memorandum and the Plaintiffs have not provided factual support for the required elements for an injunction and declaratory relief.  Finally, some of the Plaintiffs' claims for damages are not recoverable by law, specifically any claims for punitive damages against the City.

## II.  Standards applicable to this Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a short and plain statement of the claim showing that the pleader is entitled to relief.  While the rule does not require "detailed factual allegations," the factual allegations set forth are required to "raise a right to belief above the speculative level." *Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (*quoting Twombly*, 550 U.S. at 570). Conclusory allegations are not sufficient to support a claim under Rule 8(a). *Id.* at 679.

Although factual allegations must be accepted as true for the purposes of the motion, a court is not required to accept conclusory allegations and unwarranted factual deductions as true. *Gersten v. Rundle,* 833 F. Supp. 906, 910 (S.D. Fla. 1993). A court may not assume that a plaintiff can prove facts that the plaintiff has not alleged or that a defendant has violated laws in ways that have not been alleged. *Beck v. Interstate Brands Corp.,* 953 F. 2d 1275, 1276 (11th Cir. 1992). Although the federal rules ascribe to liberality in pleadings, bald assertions and conclusions of law will not defeat a properly supported motion to dismiss. *See Leeds v. Meltz,* 85 F. 3d 51, 53 (2d Cir. 1996).

### III.    The Complaint fails to meet the pleading requirements of the Federal Rules

The Plaintiffs' Complaint fails to meet the pleading requirements of Rule (8). The Plaintiffs have identified two Defendants in the Complaint (the City and Mr. Cafaro), yet the individual counts in the Complaint fail to allege which counts relate to each Defendant. The Plaintiffs generally seek relief, yet don't identify the Defendant from whom the relief is sought. Additionally, the Plaintiffs allege that this Court has "supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367" – yet there are no identifiable state law claims set forth in the Complaint. (Paragraph 9, DE 1). The Plaintiffs merely allege that the actions asserted in the Complaint violate Federal Law and "its Florida equivalent" without providing any authority for this "Florida equivalent." (Paragraphs 133,143 and 153, DE 1) The Plaintiffs allege that the actions of the Defendants are "…a tortious interference with the Plaintiffs' business relations" raising the question if this is an attempt to assert a state law claim, yet there are no facts supporting same. (Paragraph 131, DE 1). "Failure to comply with the requirements of Rule 8

may justify dismissal, albeit usually without prejudice". Industrial Specialty Chemicals, Inc. v. Cummings Engine Co., Inc., 902 F. Supp. 805, 814 (N.D. Ill. 1995)

### IV.     The Complaint should be dismissed as Plaintiffs do not have standing.

Standing is the threshold question in every federal case, determining the power of the Court to entertain the suit. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Under elementary principles of standing, a plaintiff must show that he personally suffered injury. If he cannot show personal injury, then no Article III case or controversy exists, and a federal court is powerless to hear the grievance. U.S. Const. Art. 3, § 2, cl. 1; *A&M Gerber Chiropractic LLC*, 925 F.3d 1205, 1211 (11th Cir. 2019). Article III standing must be determined as of the time that the plaintiff's complaint is filed. U.S. Const. Art. 3, § 2, cl. 1.; *Id.* at 1212. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the elements of Article III standing. U.S.C.A. Const. Art. 3, § 2, cl. 1; *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 699 (S.D. Fl. 2018). U.S.C.A. Const. Art. 3, § 2, cl. 1. In *Miami Gardens v. Wells Fargo & Co*., 2019 WL 3423228 (11th Cir. 2019) the Court held:

> Article III standing has three elements: first, plaintiff must have suffered an "injury in fact," that is, an invasion of a legally protected interest which is (1) concrete and particularized, and (2) actual or imminent, not conjectural or hypothetical; second, there must be a causal connection between the injury and the conduct complained of, that is, the injury has to be fairly traceable to the challenged action of defendant, and not the result of the independent action of some third party not before the court; and third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

The elements of standing are not mere pleading requirements but, rather, they are an indispensable part of a plaintiff's case. *Id.* A future injury that depends on either the random or unauthorized acts of a third party is too speculative to satisfy standing requirements for bringing a claim for injunctive relief under both State and Federal law. *JW by through Tammy Williams v.*

CASE NO.: 9:19-cv-81069-WPD

*Birmingham Board of Education*, 904 F.3d 1248, (11th Cir. 2018); *Sancho v. Smith*, 830 So.2d 856, 864 (Fla. Dist. Ct. App. 2002). (Election supervisors had no standing to bring the equal protection claim because constitutional rights are personal).

**A. The named Plaintiffs lack standing to sue on behalf of unidentified, potential, future hotel guests.**

The named Plaintiffs to this action are Mata Chorwadi d/b/a/ Homing Inn, Kirit Shah and Dipika Shah. (Paragraphs 1-2, DE 1) The Plaintiff Mata Chorwadi is identified as the Homing Inn motel. (Paragraph 1, DE 1)  Kirit and Dipika Shah are identified as persons who "operate and manage the day to day operations at the Homing Inn and are also majority owners of the Homing Inn. (Paragraph 2, DE 1). Throughout the Complaint the allegations relate to potential and purely hypothetical effects that the Code enforcement against the property owners may have on unidentified, potential, and future hotel guests, should any of these unidentified guests happen to violate one of twenty-six enumerated nuisance activities set forth in the Code - or the effect on "others in Boynton Beach who require emergency assistance."  (For example Paragraphs 119 and 120, DE 1; Paragraphs 128 and 130, DE 1).

These "hotel guests" are not a party to this action. The Plaintiffs cannot establish standing based on injuries that are not personal to the Plaintiffs.  Additionally, a future, potential injury that depends on either the random or unauthorized acts of these third-party, potential, future, hotel guests is too speculative to satisfy standing requirements.  Therefore, the Plaintiffs do not have standing to sue on behalf of their past, current, or future hotel guests.

**B. The named Plaintiffs have not demonstrated standing for their own claims**.

The named Plaintiffs assert injuries to their business as a result of the enforcement of the Code. (Paragraph 134, 144, 154, DE 1).  However, the Plaintiffs' conclusory allegation that their

business reputation is injured, without providing concrete, particularized and actual or imminent details related to the injury, demonstrates their failure to show that they suffered an invasion of a legally protected right. (Paragraph 154, Doc. 1); *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. at 699.  The Plaintiffs do not have standing because they have not shown that at the time the complaint was filed, they suffered some actual or threatened business injury resulting from the City's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition. *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.,* 68 F.3d 409, 414 (11th Cir. 1995); *A&M Gerber Chiropractic LLC*, 925 F.3d at 1210. Plaintiffs' assertions are conjectural and hypothetical, especially when the validity of the allegations in the Complaint are based on Plaintiffs' "information and belief" as alleged in the Complaint. (Paragraph 103, Doc. 1).  A court is not required to accept conclusory allegations and unwarranted factual deductions as true. *Gersten v. Rundle,* 833 F. Supp. 906, 910 (S.D. Fla. 1993). As the Plaintiffs have failed to establish standing this action should be dismissed.

### V.      This matter should be dismissed as the Plaintiffs' claims are not ripe.

This cause of action is not properly timed and lacks ripeness as the Plaintiffs are currently in the process of exhausting their administrative remedies. Section 15-117 of the Code provides that a property owner or the City may appeal a final order of the Special Magistrate to the Circuit Court of Palm Beach County. The Plaintiffs have filed an appeal in the Circuit Court. Additionally, the reliance of the Plaintiffs on an alleged harm to future hotel guests who may need assistance but are deterred from doing so, demonstrates that there is no issue at this time for judicial determination as these events have not occurred – or may never occur.

Generally, 'a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Nat'l Parks Conservation*

*Ass'n. v. U.S. Dept. of Interior,,* 46 F.Supp.3d 1254,1267 (M.D. Fla. 2014) The ripeness inquiry addresses the "timing of the suit." *Elend v. Basham,* 471 F.3d 1199, 1205 (11th Cir. 2006); *Rubenstein v. Florida Bar,* 69 F. Supp. 3d 1331 (S.D. Fla. 2014).  Put another way, "haste makes waste, and the premature adjudication of legal questions compels courts to resolve matters, even constitutional matters, that may with time be satisfactorily resolved at the local level, and that may turn out differently in different settings." *Miles Christi Religious Order v. Township of Northville,* 629 F.3d 533, 537 (6th Cir.2010).   "In deciding whether a claim is ripe for adjudication or review, we look primarily at two considerations: 1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration." *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1224 (11th Cir.2004).

Here, the Plaintiffs are currently in the process of exhausting their administrative remedies. "One of the basic rationales for the ripeness doctrine is to protect the administrative agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Rubenstein v. Florida Bar,* 69 F. Supp. 3d 1331 (S.D. Fla. 2014). Based on these considerations, the Plaintiffs' claims are not yet fit for decision.  Also, as noted above, the Plaintiffs have failed to allege in the Complaint any concrete, particularized and actual or imminent details related to any alleged injury in the Complaint. They assert only a potential injury that depends on either the random or unauthorized acts of these potential, future, hotel guests or conjectural and hypothetical "business" damages that are undefined in the Complaint.  These contingent future events that may not occur as anticipated, or may not occur at all are insufficient to support standing in this action. *Nat'l Parks Conservation,* at 1267. Thus, the Plaintiffs have not demonstrated any hardship they would suffer in awaiting

the completion of local adjudication.  Should the Circuit Court reject the findings of the Special

Magistrate, any of the potential future harms alleged in the Complaint would be eliminated.

### VI. Plaintiffs' Fail to Sufficiently State a Cause of Action

### A. Arguments applicable to Counts I,II and II and the Plaintiffs' claims for injunctive and declaratory relief: The Plaintiffs have not alleged a sufficient basis for municipal liability

The Plaintiffs would be required to demonstrate a policy, practice or custom that was the

moving force behind any alleged constitutional violation.  *Monell v. Dep't of Soc. Servs. of City of*

*New York*, 436 U.S. 658, 98 S. Ct. 2018, 2019, 56 L. Ed. 2d 611 (1978).  A plaintiff cannot simply

rely on a *respondeat superior* theory to hold a municipality liable for the actions of its officers.

*Id.*  The requirement of demonstrating a municipal policy, custom, usage or practice is applicable

to claims for declaratory relief.  *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 34, 131 S. Ct.

447, 178 L. Ed. 2d 460 (2010).  Thus, the Plaintiffs must demonstrate that the municipality's

deliberate action was taken with the requisite degree of culpability and must demonstrate a direct

causal link between the action and the deprivation of federal rights.  It is not enough to merely

identify conduct attributable to the employees of a municipality.  *Bd. of Cty. Com'rs of Bryan*

*Cty. v. Brown,* 520 U.S. 397, 404 (1997).

Here, the Plaintiffs fail to allege any sufficient facts to support their claim for municipal

liability.  The Plaintiffs allege generally that there was discriminatory enforcement of the Code

based on race. (Paragraphs 102-104, DE 1) However, the Code attached to the Complaint is

racially neutral and the Plaintiffs do not provide any evidence that the City has a practice, policy

or custom that allows discrimination.  *Fong v. School Board of Palm Beach County* 2012 WL

12855564 (S.D. Fla. 2012). (Exhibit A, DE 7-1)  The factual allegations in the Complaint only

relate to the Plaintiffs' code matter and no other matters. The Plaintiffs have also failed to

sufficiently allege how the enforcement of the City's Code has resulted in the deprivation of their constitutional rights as fully argued below. Rather, the Plaintiffs are asserting conclusions as to violations of the United Stated Constitution without providing reasoning as to how each section was violated.

The Plaintiffs assert actions by the City's Code officer (Paragraphs 80,81, 84-88 DE 1) which the Plaintiffs allege constitute deprivations of the Plaintiffs' civil rights. (Paragraph 88, DE 1). A local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. *Monell*, 436 U.S. at 690. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Id.* As the Plaintiffs' Complaint is lacking sufficient factual allegations to meet the requirements of *Monell* the City would request that this action be dismissed.

### B.  Count I Fails to State a Cause of Action

### 1.  The Plaintiffs' facial challenge to the code fails to state a cause of action

In Count I Plaintiffs allege that the Code "violates the First Amendment on its face by imposing penalties regardless of whether the caller was ill, victim or perpetrator, and thereby, deterring and outright burdening hotel guests' ability to ask for emergency personnel assistance." (Paragraphs 19-20, 125 DE 1). The Plaintiffs also assert that the Code violates Article I, Section 4 and 5 of the Florida Constitution. The Florida Supreme Court has held that the scope of the Florida Constitution's protection of free speech is the same as is required under the First Amendment and, as a result, Florida courts apply the principles of free speech set forth in the decisions of the United States Supreme Court. *Dep't of Educ. v. Lewis,* 416 So. 2d 455, 461 (Fla. 1982).

The Code does not violate the First Amendment through the language in the Code at Article VIII, Section 15-111(6). This Section provides:

> To encourage owners and operators to cooperate by classifying calls for service made by the owners or operators which demonstrate their commitment to abate nuisance activities and/or conditions on their property such that the self-reported activities will not be included as nuisance activity responses.

(Exhibit A, DE 1). Thus, the Code excludes any calls from the property owner as included as a "nuisance" call under the Code and does not "impose penalties regardless of whether the caller was ill, victim or perpetrator" as alleged by the Plaintiffs. (Paragraph 126, DE 1)[1]

In order to succeed on a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner. *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007). The allegations of the Complaint only assert issues with the application of the Code to the Plaintiffs' code matter. In fact, the Plaintiffs allege that they believe the Code was only enforced against their business. (Paragraph 103, DE 1) Thus, the Plaintiffs have not alleged any facts which would demonstrate that the Code could never be applied in a constitutional manner. Therefore, Count I should be dismissed.

### 2. The Plaintiffs' "as applied" challenge to the code fails to state a cause of action

The Plaintiffs also assert that the Code violates the First Amendment as applied in the enforcement against the Plaintiffs and their hotel guests. (Paragraph 127, DE 1). Plaintiffs allege that the Code enforcement is an undue burden and has a "chilling effect" on their First Amendment right to free speech and to petition the peace officer/emergency assistance for

---

[1] The City would refer to the arguments found in the above sections regarding the ability of the named Plaintiffs to assert a cause of action for the "hotel guests" identified in this Count. (Paragraph 126, DE 1).

protection and assistance.  (Paragraph 20, DE 1).  However, the only allegation supporting this conclusion is the Plaintiffs' statement that the Code "has the effect of encouraging property owners of hotels to discourage their hotel guests from contacting the police department/emergency personnel for any reason…" (Paragraph 21, DE 1).  Other then this conclusory allegation, the Plaintiffs provide no support for this position.  In fact, neither the Code nor the Nuisance Abatement Agreement attached to the Complaint make this request of the Plaintiffs. The Agreement provides that the Plaintiffs should place no trespassing signs on the property; properly light areas in accordance with City code; maintain shrubs in accordance with City code; and install surveillance cameras on the property. (Exhibit B, DE 1-3). The Code provides that the purpose of the Code is to identify chronic nuisance activities and conditions that present health, safety and quality of life concerns where the persons responsible for such properties fail to take corrective action to abate nuisance activities or conditions.  Section 15-111 (Exhibit A, DE 1-2).  The Code provides that the City will work in partnership with owners to address the negative results caused by chronic nuisance activities or conditions and to improve the vitality of neighborhoods by addressing excessive calls for service to the police and fire departments. Section 15-111 (5) (Exhibit A, DE 1-2) If the Plaintiffs take it upon themselves to take the action of forbidding ill guests or victims of crime from calling the police, this action is inconsistent with the requirements of the Code and is inconsistent with the requirements of the Agreement Plaintiffs have attached to the Complaint.

Restrictions on the First Amendment must be supported by a compelling governmental interest, and must be narrowly drawn to insure that there is no more infringement than is necessary.  U.S.C.A. Const. Amend. 1*; Montgomery v. State,* 69 So.3d 1023, 1029 (Fla. 5th DCA 2011).   In *State v. J.P.,* the Florida Supreme Court reasoned that to demonstrate that

legislation serves some compelling interest, the government must do more than simply posit the existence of the disease sought to be cured, and must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate the harms in a direct and material way. *State v. J.P.*, 907 So.2d 1101, 1116 (Fla. 2004).   However, the government is not required to present scientific or statistical proof of the wisdom of the legislature's course. *State v. J.P.*, 907 So.2d at 1117.   In order for an ordinance to be narrowly tailored, "there must be a sufficient nexus between the stated government interest and the classification created by the ordinance." *Nunez v. City of San Diego,* 114 F.3d 935, 946 (9th Cir. 1997).   In *State v. J.P.,* the Court analyzed the constitutionality of the curfew ordinances and the nexus between the asserted interests and the means chosen, and whether this is the least restrictive alternative to achieve the goals. *State v. J.P.*, 907 So.2d at 1117.   In *State v. J.P.*, the Court found that that the curfew ordinances were not "narrowly tailored" because the broad coverage of the curfews included otherwise innocent and legal conduct by minors even where they had the permission of their parents and the ordinances imposed criminal penalties for curfew violations. *Id.* at 1118.

The instant case differs from *State v. J.P.* because the Code is narrowly tailored to reduce or eliminate the significant amount of overdoses on the Plaintiffs' property by making security and safety changes to the property as required in the Nuisance Abatement Agreement.  Unlike *State v. J.P.*, the Plaintiffs are not facing criminal penalty for failing to comply with the Nuisance Abatement Agreement. (Exhibit B, DE 1-3) In addition, the Code sets forth twenty-six (26) specific types of activities that would be deemed nuisance activity. Ordinary illness calls and calls from women in labor, the examples used in the Plaintiffs' Complaint, are not calls that are included in this list. The Code assists in achieving the compelling governmental interest for the City to reduce the significant amount of drug overdoses on the Plaintiffs' property. The Nuisance

Abatement Agreement does not require that the Plaintiffs tell guests not to call the police; instead, it requires that the Plaintiffs take actions to abate certain conditions that may contribute to the nuisance activity on the property.  (Exhibit E, DE 1-6).  The Plaintiffs chose not to comply with the terms of the Nuisance Abatement Agreement. (Exhibit F, DE 1-7).  The mere assertion that the Plaintiffs choose to tell guests not to call the police is insufficient for proving that there is an "as applied" violation of the First Amendment.  Therefore, Count I should be dismissed.

### C.  Count II fails to state a cause of action

The Plaintiffs attempt to assert that the Code and its enforcement violate the Fourteenth Amendment Procedural Due Process Clause and "its Florida equivalent." (Paragraph 143, DE 1). The Plaintiffs assert that the City initiated proceedings against the Plaintiffs without adequate procedural protections, but the Plaintiffs do not explain what procedural protections were not afforded. Instead, the Plaintiffs assert that the procedural protections were not adequate. (Paragraph 138, DE 1). The Plaintiffs assert that the Code does not give "an opportunity to contest the discretionary decision to characterize a hotel guest's emergency assistance call as an offense or the decision to enforce the Nuisance Policy against the Plaintiffs for calls made by hotel guests." (Paragraph 139, DE 1). The Plaintiffs assert that the City "threatened and forced the Plaintiffs to accept the characterization of "nuisance" by requiring the Plaintiffs, under duress, to sign the Agreement." (Paragraph 141-142, DE 1). However, the Plaintiffs do not state how they were under duress, nor do they acknowledge the subsequent Nuisance Abatement Agreement that was signed on their behalf and that is attached to the Complaint. (Exhibit E, DE 1-6).  In fact, the City provided procedural protections and opportunities to the Plaintiffs to abate the chronic nuisance conditions on their property as demonstrated by the Plaintiffs' recitation in the Complaint of the procedural history of this code matter, by the language of the Code itself,

and by the process by which this code issue was adjudicated as demonstrated in the Exhibits that the Plaintiffs have attached to the Complaint. (Exhibits B, C, E, DE 1-3, 1-4, 1-6).

A procedural due process violation is not complete "unless and until the state fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 123 (1990). Only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under Section 1983 arise. *Id.* At a minimum, the due process clause requires that persons deprived of life, liberty or property be afforded notice and an opportunity to be heard. *Armstrong v. Manzo,* 380 U.S. 545, 549, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In *First Assembly of God of Naples, Fla., Inc. v. Collier Cty*., 775 F. Supp. 383, 389 (M.D. Fla. 1991) the Court ruled that the parties challenging the county's comprehensive zoning ordinances did not have a viable procedural due process claim because they admitted that they were afforded notice and an opportunity to be heard but merely alleged that notice and hearing they were afforded did not meet state statutory requirements. Here, the Plaintiffs were afforded notice and an opportunity to be heard on two separate dates before the Special Magistrate. (Exhibit F, DE 1-7). On July 13, 2018, the City of Boynton Beach Police Department provided notice of the violation of the City's Chronic Nuisance Ordinance to the Plaintiffs. (Exhibit B, DE 1-3). On December 26, 2019, the Nuisance Abatement Agreement was signed by the Plaintiffs to work with the City to repair and restore the conditions on the Plaintiffs' property. The Special Magistrate held hearings on January 16, 2019 and April 17, 2019 where the Plaintiffs appeared through counsel, the same counsel who is representing the Plaintiffs in this case. At the hearings, counsel provided arguments on behalf of the Plaintiffs. (Exhibit F, DE 1-7). After considering the testimony and evidence, on May 2, 2019, the Special Magistrate upheld the City's Code and found that the Plaintiffs were in Violation of Chapter 15, Art. XIII of Boynton Beach Chronic Nuisance

Property Code. (Exhibit F, DE 1-7). On May 31, 2019, the Plaintiffs filed an appeal in the Circuit Court for Palm Beach County of the Special Magistrate's Order which is still pending a decision. The City did not violate the Plaintiffs' Fourteenth Amendment due process rights as due process was provided to the Plaintiffs.

The Plaintiffs make reference to the Fourteenth's Amendment's Due Process Clause's Florida equivalent but do not specify in the Complaint what the "equivalent" is and how the City has violated it. (Paragraph 143, DE 1).  The Plaintiffs simply conclude that the City violates Florida equivalents without stating more.  The Plaintiffs fail to sufficiently state a cause of action that the City violated the Fourteenth Amendment's due process clause and it's "Florida Equivalent."  Therefore, Count II should be dismissed.

### D.  Count III fails to state a cause of action

Plaintiffs assert that the City "intentionally discriminated against the Plaintiffs by chilling their guests' ability to summon a peace officer/emergency assistance personnel and by penalizing the Plaintiffs for guests' seeking assistance."  (Paragraph 147, DE 1).  The Plaintiffs assert that they "were injured by the discriminatory enforcement of the Nuisance Policy because they were encouraged to prevent hotel guests from seeking assistance." (Paragraph 150, DE 1).  Plaintiffs assert discrimination based on race.  (Paragraph 102-104, DE 1).  The Plaintiffs state, "blaming the minority, small business owners, Plaintiffs Kirit and Dipika Shah, for the emergency assistance phone calls placed by others is a form of discrimination." (Paragraph 102, DE 1).  The Plaintiffs assert that "upon information and belief," the City only enforced the Code against this minority-owned business." (Paragraph 103, DE 1)  The Plaintiffs state "this disparate treatment based on race that blames this minority-owned business for the phone calls made by hotel guests is violation of the Plaintiffs' constitutional rights and constitutes invidious racial discrimination."

(Paragraph 104, DE 1). The Plaintiffs do not provide more information as to the form of discrimination they are alleging nor do they specify what "information or belief" they rely on in concluding that the Code is causes racial discrimination.  Conclusory allegations without more are insufficient to support a cause of action as a Court is not required to accept conclusory allegations and unwarranted factual deductions as true. *Gersten v. Rundle,* 833 F. Supp. 906, 910 (S.D. Fla. 1993).

Further, in *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995) the United States Supreme Court ruled that all governmental action based on race should be subject to detailed judicial inquiry to ensure that personal right to equal protection of the laws has not been infringed. All racial classifications reviewable under the Equal Protection Clause must be strictly scrutinized. *Id*. at 224. Thus, strict scrutiny is the proper standard for analysis of all racial classifications, whether imposed by a federal, state, or local actor. *Id.* However, under the Equal Protection Clause, social and economic legislation that does not employ suspect classifications or impinge on fundamental rights must be upheld against an equal protection attack when the legislative means are rationally related to legitimate governmental purpose. *Estate of McCall ex rel. McCall v. U.S.* 642 F.3d 944, 949-950 (11th Cir. 2011).

In the instant case, the Plaintiffs attempt to assert that they are being discriminated against based on race but, there is no express or implicit classification of race mentioned by the Plaintiffs' complaint nor is a classification specified in the code. The Plaintiffs base their allegations on their "information and belief." (Paragraph 103, DE 1).  Strict scrutiny is not the proper standard because the Code does not expressly or implicitly classify a race to be subject to the Code. Instead, the proper standard is whether the Code's means are rationally related to legitimate governmental purpose. The City's enforcement of the Chronic Nuisance Abatement

Code is rationally related to the legitimate purpose to reduce the significant amount of overdoses on the Plaintiffs' property as specifically set forth in the preceding sections of this Motion.

The Plaintiffs assert that Defendants violated the "Florida equivalent" of the Fourteenth Amendment Equal Protection Clause. (Paragraph 153, DE 1). The Plaintiffs do not specify what the Florida "equivalent" is and how the City has violated it. The Plaintiffs assert conclusions but do not demonstrate how the Fourteenth Amendment Equal Protection Cause was violated by the City's Code.  The Plaintiffs fail to sufficiently state a cause of action that the City violated the Fourteenth Amendment's Equal Protection Clause and its Florida equivalent of the Fourteenth Amendment of the United States Constitution.  Therefore, Count III should be dismissed.

## VII.    Claim for Declaratory and Injunctive Relief

### A.  The Plaintiffs' request for permanent injunction should be denied

A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000). The standard for permanent injunctive relief is essentially the same as the standard for a preliminary injunction, except that the plaintiff must show actual success on the merits, rather than a likelihood of success. *Rubenstein v. Florida Bar*, 72 F. Supp. 3d 1298, 1318 (S.D. Fla. 2014).

The Plaintiffs cannot demonstrate a substantial likelihood of success on the merits of the constitutional challenges found in the Complaint. The failures of the Plaintiffs' claims are discussed in detail in the prior sections of this Motion challenging the Plaintiffs' standing; the ripeness of this action; requesting dismissal of Counts I, II, and III of the Complaint due to

failure to set forth sufficient facts to support those claims; and the failure of the Plaintiffs to establish a basis for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 2019, 56 L. Ed. 2d 611 (1978).

The Plaintiffs have failed to allege that they have exhausted all administrative remedies prior to filing suit which would prevent the imposition of a preliminary injunction. Where the failure to exhaust administrative remedies would likely preclude an award of relief at the end of litigation, the party seeking relief has not made a sufficient showing of probability of ultimate success to obtain a preliminary injunction. *Wallace v. Lynn*, 507 F.2d 1186, 1189 (D.C. Cir. 1974).   This is so even when the claims made are based upon violations of constitutional rights. Id.

The Plaintiffs have not set forth sufficient facts to demonstrate that irreparable injury will be suffered unless the injunction issues.  The allegations of the Complaint relate to potential and unsupported effects that the Code enforcement against the property owners may have on unidentified,  potential, and future hotel guests, should any of these unidentified guests happen to violate one of  twenty-six enumerated nuisance activities set forth in the Code, or "others in Boynton Beach who require emergency assistance."  (For example, Paragraphs 119 and 120, DE 1; Paragraphs 128 and 130, DE 1).

The named Plaintiffs assert injuries to their business as a result of the enforcement of the Code. (Paragraph 134, 144, 154, DE 1).  However, the Plaintiffs' conclusion that their business reputation is injured, without providing concrete, particularized and actual or imminent details related to the injury, demonstrates their failure to show that they suffered an invasion of a legally protected right. (Paragraph 154, DE 1); *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 699 (S.D. Fla. 2018).  Although the Plaintiffs have asserted damage to their business, the

Plaintiffs' assertions are conjectural and hypothetical, especially when the validity of the allegations in the Complaint are based on Plaintiffs' "information and belief" as alleged in the Complaint.  (Paragraph 103, DE 1).

The mere possibility of harm is not sufficient to satisfy this element.  As stated in *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 953, 39 L. Ed. 2d 166 (1974):

> The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

In addition, the Plaintiffs have not asserted any harm that could not be adequately compensated at a later date should an injunction be declined, even if the City did move forward with enforcing the Abatement Agreement.  An injury is irreparable only if it cannot be undone through monetary remedies. Economic loss that can be calculated and compensated by monetary damage is ordinarily not held to be an irreparable injury. *Claughton v. Donner*, 771 F. Supp. 1200, 1204 (S.D. Fla. 1991).  See also, *Colorado River Indian Tribes v. Town of Parker,* 776 F.2d 846, 850 (9th Cir. 1985) (Economic loss is rarely irreparable for preliminary injunction purposes since money can be restored to the prevailing party after final judgment). Substantial litigation costs which cannot be recouped are not irreparable injuries. *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S. Ct. 1028, 1040, 39 L. Ed. 2d 123 (1974).

The Plaintiffs have also failed to set forth facts to demonstrate that the threatened injury outweighs whatever damage the proposed injunction may cause the City and, if issued, the injunction would not be adverse to the public interest. The imposition of an injunction preventing the City from enforcing the Nuisance Abatement Agreement or the Code would be adverse to the public interest of protecting the health and safety of all citizens. The requirements of additional

CASE NO.: 9:19-cv-81069-WPD

lighting, signs, maintenance and security on the property imposed by the Abatement Agreement and even possible imposition of monetary fines on the Plaintiffs would not outweigh this consideration.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Plaintiffs have not made a sufficient showing of a substantial likelihood of success (or any likelihood of success) on the merits of their action; have not alleged irreparable harm; have not demonstrated that the imposition of an injunction would outweigh any damage the injunction would cause; and have not shown that an injunction would not be adverse to the public interest. As such, the Plaintiffs' request for an injunction and for declaratory relief should be denied.

### VIII.   The Plaintiffs' claims for punitive damages should be dismissed

The Plaintiffs seek injunctive and declaratory relief, compensatory and punitive damages, damages incurred for loss of business reputation and relationships, attorneys' fees and costs, and any other relief the Court believes is just or equitable. (Paragraphs 134, 144, 154, Doc. 1-1). P21). Punitive damages are not recoverable against a municipal entity as a political subdivision of the state. 42 USC §1981(a)(b)(1); *Shedrick v. District Bd. of Trustees of Miami-Dade College,* 941 F.Supp.2d 1348, 1360 (S.D. Fla. 2013). Thus, the Plaintiffs' claims for punitive damages should be dismissed with prejudice.

WHEREFORE, Defendant, CITY OF BOYNTON BEACH, respectfully requests that this Honorable Court enter an Order dismissing the Plaintiffs' Complaint.

CASE NO.: 9:19-cv-81069-WPD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of August 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel for the Plaintiffs, Manshi Shah, Esq., 6526 Jessy Court, Lake Worth, FL 33467, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

GOREN, CHEROF, DOODY & EZROL, P.A.
*Attorneys for Defendant, City of Boynton Beach*
3099 East Commercial Blvd., Suite 200
Ft. Lauderdale, Florida 33308
Phone: (954) 771-4500 / Fax: (954) 771-4923

By:   */s/ Tracey A. DeCarlo*
JAMES A. CHEROF
Florida Bar No. 291846
jcherof@gorencherof.com
TRACEY A. DeCARLO
Florida Bar No. 60259
tdecarlo@gorencherof.com
HEATHER NEEDELMAN
Florida Bar No. 92925
hneedelman@gorencherof.com