UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-81069-CIV-DIMITROULEAS

MATA CHORWADI, INC., d/b/a
HOMING INN, KIRIT SHAH, AND
DIPIKA SHAH,

      Plaintiffs,

vs.

CITY OF BOYNTON BEACH AND
GREGORY CAFARO in his
individual and official capacities,

      Defendants.
_____/

## OMNIBUS ORDER ON MOTION TO DISMISS AND MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE is before the Court upon Plaintiffs' Motion for Preliminary Injunction [DE 7] and Defendants' Motion to Dismiss [DE 10]. The Court has carefully considered the Motions, the Responses, the Replies, and the Parties' oral arguments at the October 11, 2019 hearing, and is otherwise fully advised in the premises.

### I.  BACKGROUND:

This action arises from the City of Boynton Beach's enforcement of its Chronic Nuisance Property Code ("Code") against the Homing Inn.

Plaintiff Mata Chorwadi, Inc. d/b/a Homing Inn is a 103-room motel in Boynton Beach. Plaintiffs Kirit Shah and Dipka Shah have operated the Homing in since 1998 and are majority owners. Defendant City of Boynton Beach ("City") is a municipal corporation located in Palm Beach County, Florida. Defendant Greg Carafo is a police officer in Boyton Beach, responsible for enforcing the City's Chronic Nuisance Property Code.

In June 2017, Defendant passed the Code at issue. [DE 1] p. 5. The purpose of the Code, according to the City, is crime prevention through property design. The Code defines a "nuisance" as one of 26 activities such as prostitution, trespass, loitering, or two or more calls for service to a property related to an overdose within 30 days. The Policy deems a property a chronic nuisance when the City has responded to 3 nuisance activities at the property in 30 days. It is the City's position that these two provisions interact in such a way that six overdose calls within 30 days would make a property eligible to be deemed a "chronic nuisance." Once a property qualifies as a "chronic nuisance," the City's chronic nuisance committee decides as to whether the property will be declared a chronic nuisance. According to the City at the October 11, 2019 hearing, the chronic nuisance committee works with the property owners to improve the property. In determining if a qualifying property will be declared a chronic nuisance the committee considers whether the property owners are complying with the committee's suggestions.

Once a property has been declared a chronic nuisance, the property owners are provided with a Nuisance Abatement Agreement which contains a Corrective Action Plan. Failure to agree to and sign the Nuisance Abatement Agreement within 15 days of the Declaration of Chronic Nuisance notice constitutes a violation of the Chronic Nuisance Property Code. *See* [DE 7-1] p. 3. The nuisance Code also provides the City with the option to levy against a declared nuisance property the cost for calls for service related to further nuisance activity. *See id.*

If a property owner refuses to sign or violates the Nuisance Abatement Agreement, the City may prosecute its Declaration of a Chronic Nuisance before the City's Special Magistrate. *See id.* at 4. The Special Magistrate may uphold or reject the City's Declaration of Chronic Nuisance and adjudicate whether the property owners have violated the Nuisance Abatement

Agreement or Corrective Action Plan. *See id.* at 5. A property owner may appeal a decision by the Special Magistrate with the Circuit Court of Palm Beach County. *See id.*

According to the City, between December 2017 and April 2018 there were 13 calls for service to Plaintiffs' property related to overdoses. Plaintiffs received a notice, or a Declaration of Chronic Nuisance, from the City on July 13, 2018 informing them that their property had been deemed a chronic nuisance. [DE 10] p. 10. The City's notice state that Plaintiffs had 15 days to sign a Nuisance Abatement Agreement and that any further services related to chronic nuisance activities may be levied against the Plaintiffs' property.[1] The Nuisance Abatement Agreement required Plaintiff to implement security recommendations such as trimming shrubbery and installing security cameras. Plaintiff signed the Nuisance Abatement Agreement in November 2018, allegedly under threat of a daily $1,000 fine, and again Plaintiffs signed the Nuisance Abatement Agreement on December 26, 2018, again, purportedly under threat from the City.

On April 17, 2019 a hearing was held in front of a Special Magistrate who found that Plaintiffs were in violation of the Nuisance Abatement Agreement. The Special Magistrate entered an Order upholding the City's Declaration of Chronic Nuisance and notice of violation of the Nuisance Abatement Agreement, which Plaintiffs appealed on May 31, 2019. This appeal in the Circuit Court of Palm Beach County has not been stayed pending this litigation. [DE 14] p. 3.

On July 29, 2019, Plaintiffs filed the instant action, alleging that the City of Boynton Beach's Chronic Nuisance Property Code violates their rights under the US Constitution and the Florida Constitution, as well as the rights of their patrons. Plaintiffs allege that the City's

---

[1] The Court notes that it is unclear from the Declaration of Chronic Nuisance of Plaintiffs' property whether Plaintiffs' had 15 days to sign the Nuisance Abatement Agreement or 30 days to sign and comply with the Nuisance Abatement Agreement and accompanying Corrective Action Plan. *Compare* [DE 7-2] p.1 (stating that Plaintiff had until the "final complaint date August 13, 2018 to correct" the violations in the Nuisance Abatement Agreement/Corrective Action Plan) *with* [DE 7-2] p. 6 (informing Plaintiffs' that "[f]ailure to sign and enter into the [Nuisance Abatement Agreement] within 15 days of receipt of [the] Declaration will result in a violation and further prosecution and enforcement action by the City.").

enforcement of its nuisance Code against the Homing Inn and its owners has chilled the First Amendment rights of Plaintiffs and their hotel guests and caused harm to Plaintiffs' business. Plaintiffs' complaint states three claims 1) a violation of Plaintiffs' and Plaintiffs' patrons First Amendment rights 2) a violation of Plaintiffs' Fourteenth Amendment right to due process and 3) a violation of Plaintiffs' Fourteenth Amendment right to equal protection. In addition to damages, Plaintiff seeks injunctive relief.

## II. DISCUSSION

### 1. *Defendant's Motion to Dismiss*

a. Standing

In both its Motion to Dismiss and its Response to Plaintiffs' Motion for Preliminary Injunction, Defendant argues that Plaintiffs do not have standing to bring their claims.

An indispensable component of invoking federal jurisdiction is demonstrating that the Plaintiff has standing to bring her claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum" of standing contains three elements: 1) an "injury in fact," 2) a causal connection between the injury and the conduct complained of, and 3) redressability by a judicial decision. *See id*. At 560-61.

With regard to Plaintiffs' due process and equal protection claims, Plaintiffs' allegations that they have suffered costs and loss of good-will due to the City's efforts to enforce the Code at issue, including having to pay to implement the City's security recommendations and losing business and good-will, are sufficient to demonstrate an injury-in-fact that is concrete and particularized. Further, this alleged injury is fairly traceable to the City's efforts to enforce of the Nuisance Code, such as the City's issuance of the Nuisance Abatement Agreement and the City's posting of violation notices, *see* [DE 7-8, 7-7]. Finally, Plaintiffs alleged injury is

redressable by the relief sought from the court.

With regard to Plaintiffs' First Amendment claims, Defendant argues Plaintiffs' do not have standing to bring claims on behalf of past, present, or future hotel guests as 1) the injury is not "personal" to Plaintiffs and 2) the injury is too speculative because future injury to hotel guests depends on "random and unauthorized acts" by these guests.

First Amendment rights, however, are a clearly recognized exception to the general rule that "constitutional rights are personal and may not be asserted vicariously." *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). Litigants may challenge the constitutionality of a law on behalf of others when their claim is based on the prediction that the "statute's very existence may cause others not before the court to refrain from constitutionally protected speech." *See id*. Plaintiffs premise their First Amendment claim on the allegation that the City's Chronic Nuisance Property Code will discourage their guests from calling 911, thereby chilling their guests' constitutionally protected speech. Therefore, Plaintiffs have standing to bring a First Amendment claim on behalf of their hotel patrons.

  b.  Ripeness

In both its Motion to Dismiss and its Response to Plaintiffs' Motion for Preliminary Injunction, Defendant argues that Plaintiffs' claims are not yet ripe for adjudication by this Court.

The ripeness doctrine prevents Courts from adjudicating disputes prematurely while the issues remain abstract. *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1224 (11th Cir. 2004). The considerations for determining if a case or controversy is ripe are "1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration." *See id*. An issue is fit for judicial decision if a Court could decide a case without

the need for the facts to develop further and "the institutional interests of the court and agency favor immediate review." *See Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019). When weighing the potential hardship to the parties of withholding court consideration, a court should look to see whether a party is "forced to choose between foregoing lawful activity and risking substantial legal sanctions." *See id*. In the Frist Amendment context, the review of a claim's ripeness is more permissive. *See Rubenstein v. Fla. Bar*, 69 F. Supp. 3d 1331, 1342 (S.D. Fla. 2014) (citing *Cheffer v. Reno*, 55 F.3d 1517, 1523 n. 12 (11th Cir. 1995)).

According to Defendant, Plaintiffs' claims are not fit for judicial decision because Plaintiffs are appealing the Special Magistrate's decision to the Circuit Court of Palm Beach County. Defendant further argues Plaintiffs have not alleged sufficient hardship because the purported harm remains a "potential," future harm.

The Court disagrees. Plaintiffs' claims are fit for adjudication. Defendant City of Boynton Beach has declared the Plaintiff property a chronic nuisance, the City has taken steps to enforce its Code against Plaintiffs, and the City's Special Magistrate issued a written order upholding the City's chronic nuisance determination. The City's internal decision process has concluded; the City's determination with regard to the Plaintiff has been finalized in both a written notice to the Plaintiffs and the Special Magistrate's written order. *Cf. Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) (finding that a Plaintiff's claims were not ripe when it had failed to obtain a conclusive, written determination from the City). In addition, Plaintiff has sufficiently alleged an ongoing hardship from the City's steps to enforce the Nuisance Code. Further, "if a dispute otherwise qualifies as fit for review, any lack of hardship is irrelevant." *See Rubenstein v. Fla. Bar*, 69 F. Supp. 3d 1331, 1344 (S.D. Fla. 2014) (quoting *Eternal Word Television Network, Inc. v. Sebelius*, 935 F.Supp.2d 1196, 1224 (N.D.Ala.2013)).

    c. Insufficient Basis for Liability

In both its Motion to Dismiss and its Response to Plaintiffs' Motion for Preliminary Injunction, Defendant alleges that Plaintiffs has failed to point to a "policy, practice or custom" that was a cause of constitutional violation, a requirement to assert a basis for municipal liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

The Court finds that the Plaintiffs have pled a sufficient basis for municipal liability by pointing to Defendant's written "Chronic Nuisance Property Code" as the source of the constitutional violation.

    d. Failure to state a claim

In addition to challenging the Plaintiffs' claim for lack of standing, ripeness, and insufficient basis for municipal liability, Defendant also argues that Plaintiff has failed for state a claim for any of the relief they seek.

    *i. Legal Standard*

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere

conclusory statements . . ." *Iqbal*, 556 U.S. at 663. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984)).

        ii.       *Count I - First Amendment Violations*

In Count I of the Complaint, Plaintiffs allege that the City's Code violates of the First Amendment of the United States Constitution and Florida Constitution equivalents both on its face and as applied. Plaintiffs assert that communications to peace officers or emergency personnel are protected under the First Amendment's "right to petition". Further, Plaintiff alleges that enforcement of the Nuisance Policy is tortious interference of Plaintiffs' business.

Defendant argues that Plaintiffs' claim fails to state a facial First Amendment claim as the Policy does not punish Plaintiffs' own calls. Further, Defendant argues that for a facial challenge Plaintiff must prove the Policy could never be constitutionally applied and that Plaintiff has failed to do so by alleging the Policy was discriminatorily enforced. Defendant argues Plaintiffs' claim fails to state an as applied First Amendment claim as Plaintiff has failed to allege facts that would show the Code or Nuisance Abatement Agreement violate the First Amendment. If anyone is encouraging guests not to call the police, according to Defendant Plaintiff is. Further, Defendant argues that the government has a compelling interest in preventing overdoses on Plaintiff's property and that this Nuisance Policy is narrowly tailored to serve such a purpose.

Plaintiff's complaint alleges sufficient facts to state a claim for a violation of the First Amendment. Plaintiff has alleged that the Code is facially unconstitutional as it places a content-based restriction on Plaintiffs' and Plaintiffs' hotel-guests constitutionally protected right to

petition the government by targeting calls related to overdoses. Content-based restrictions on free speech are subject to strict scrutiny; therefore, the speech regulation must be narrowly tailored to serve a compelling government interest. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2231 (2015). Plaintiff has alleged that the City's disparate treatment of calls related to overdoses is not narrowly tailored to serve the governments compelling interest in preventing crime. In addition, Plaintiffs allegation that the that the Code is unconstitutional as applied is sufficient. The government likely cannot exert pressure upon a private entity to restrict speech the government could not restrict directly. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). Plaintiff has alleged that the Code has chilled hotel guests exercise of their free speech rights through the posted violation notice that create confusion and by encouraging Plaintiffs to restrict the speech of their guests.

    *iii.* *Count II – Procedural Due Process Violation*

Under Count II Plaintiffs allege that the nuisance Code violates their right to due process under Fourteenth Amendment to the United States Constitution and Florida Constitution equivalents. According to Plaintiffs, enforcement of the Nuisance Policy threatens to deprive them of a property interest by subjecting them to potential fines, forcing them to follow costly, onerous "security recommendations", and damaging the good will of their business.  Plaintiffs contend that Defendant did not provide adequate procedural protections. In particular, Plaintiffs allege Defendant did not provide them with an opportunity to dispute the characterization of each emergency call as a "nuisance" per the Code and required the Plaintiffs to sign the Nuisance Abatement Agreement without due process.

Defendant in its Motion to Dismiss argues that Plaintiff was provided with extensive process including a hearing in front of a Special Magistrate on the City's Declaration of Chronic

Nuisance and Plaintiffs' alleged violation of the Nuisance Abatement Agreement.

To establish a procedural due process claim under the Fourteenth Amendment of the U.S. Constitution, a plaintiff must first show the deprivation of a liberty or property interest protected by the Due Process Clause. *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436 (11th Cir. 1998). Further, a § 1983 claim alleging a denial of procedural due process must demonstrate: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

Plaintiffs' complaint alleges facts sufficient to meet these three elements. Plaintiffs' identify a recognized property interest in the costs they have incurred attempting to meet the City's "security recommendations" and the good-will their business has lost since being identified as a chronic nuisance property. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (noting that the assets of a business are unquestionably a property interest protected under the Fourteenth Amendment). Plaintiffs' have clearly identified a state action in the form of the City's efforts to enforce the nuisance code. Lastly, Plaintiffs' allege they were not afforded sufficient process prior to the City's Declaration of Chronic Nuisance and allegedly coerced consent to the Nuisance Abatement Agreement.

    iv.   Count III - Equal Protection

In Count III, Plaintiffs allege that the City's Code violates the Fourteenth Amendment's Equal Protection Clause and Florida Constitution equivalents. Plaintiffs allege that "[u]pon information and belief," Defendants only enforced the Nuisance Policy against [Plaintiffs'] minority-owned business. Therefore, Plaintiff seems to be making an equal protection claim for race-based discrimination.

Defendant argues that Plaintiffs' allegation of racial discrimination must fail because

Plaintiff has not alleged facts sufficient to support such a claim. Defendant argues that the Code does not include any explicit or implicit racial classification and that Plaintiffs have only made conclusory allegations as to the discriminatory enforcement of the code.

In order to plead a claim under the Equal Protection Clause, a plaintiff must allege facts that show that the government treated the plaintiff differently than other similarly situated persons. *See, e.g., Gary v. Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002); *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1045-46 (11th Cir. 2008).

In so far as Plaintiffs' equal protection claim is based on racial discrimination, the Court agrees with Defendant. Plaintiffs' claim of race-based discrimination would fail either as a claim of facial discrimination or discrimination as applied. Defendant City of Boynton Beach's Chronic Nuisance Code does not include any explicit language discriminating based on race. Plaintiffs' conclusory allegation that the code is applied only to minority-owned businesses is not sufficient to state a claim for race-based discrimination. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In the alternative, if Plaintiffs' equal protection claim is based on a non-suspect class Plaintiffs' claim fails to clearly identify a classification being made by the Code or the Code's enforcement and disparate treatment based on that classification. *Young Apartments, Inc.*, 529 F.3d at 1045-46. Further, Plaintiff has failed to allege that the City's actions had no rational basis in a legitimate government interest. *See Estate of McCall ex rel. McCall v. U.S.*, 642 F.3d 944, 950 (11th Cir. 2011).

    2. ***Plaintiff's Motion for Preliminary Injunction***

        a. <u>Legal Standard</u>

To obtain a preliminary injunction, a party must demonstrate "(1) [that there is] a

substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

      b. <u>Analysis</u>

In its Motion for Preliminary Injunction, Plaintiff focuses on its First Amendment and Due Process claims. Plaintiff argues that calling for emergency services, constitutes petitioning the government, and, therefore, is protected free speech under the First Amendment, making the nuisance Code subject to the greatest scrutiny. In addition, Plaintiff asserts that the government cannot articulate a compelling government interest to justify such a restriction. In response, Defendant presents a summary of the arguments it outlined in its Motion to Dismiss.

The irreparable harm Plaintiff claims is the onerous and costly requirements mandated by the Nuisance Abatement Agreement, the damage to the good-will or Plaintiffs' business, and the chilling on Plaintiffs' and Plaintiffs' patrons First Amendment rights. Defendant, in response, argues that the harm to potential, future guests is too attenuated to constitute a likely irreparable harm and the harm to Plaintiffs' business could be remedied with damages.

The Court finds that Plaintiffs failed to demonstrate both a substantial likelihood of prevailing on the merits and a likely irreparable harm. "Because a preliminary injunction is "an extraordinary and drastic remedy," its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion. *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (citing *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir.1975).

With regard to any economic harm allegedly befalling Plaintiffs' business, Plaintiffs have failed to demonstrate the damage will likely be irreparable. Economic damages that can be compensated monetarily, like the costs of carrying out Defendant City's security recommendations and a business's loss of good-will, do not usually satisfy the irreparable harm prong of a preliminary injunction analysis.

With regard to Plaintiffs' claim that irreparable harm may be done as the City's Code may prevent someone from calling 911 in the event of an overdose, the Court notes that the City's Code does not prevent the provision of emergency services to overdose victims nor does it prohibit potential overdose victims or Plaintiffs from calling 911. Certain restrictions on First Amendment rights have been found to be per se irreparable harms. *See, e.g. Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983). However, courts have distinguished between restrictions or burdens on free speech rights and incidental effects. *See id.* at 1188-1189 (citing *Younger v. Harris*, 401 U.S. 37, 51 (1971). The Code at issue in this case at most places an indirect burden on Plaintiffs' hotel guests' First Amendment freedoms by creating confusion and incentives for Plaintiffs to discourage guests from making certain 911 calls. Under the Code, there is no penalty for Plaintiffs calling 911 nor is there a direct penalty on Plaintiffs' patrons for making 911 calls. While Plaintiffs claim the Code and Violation Notice signs have had a chilling effect on their guests' speech, at this time, Plaintiffs have not demonstrated that it is likely Plaintiffs' hotel guests will be disincentivized from calling 911 by the Code.

As the Motion for Preliminary Injunction fails to demonstrate a likely irreparable harm and a substantial likelihood of prevailing on the merits, the Court need not address the other prongs of the preliminary injunction test.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss [DE 10] is hereby **DENIED** with regard to Counts I and II.

2. Defendants' Motion to Dismiss [DE 10] is hereby **GRANTED** with regard to Count III, Plaintiffs' equal protection claim

3. Plaintiff is granted leave to file an Amended Complaint with regard to Count III on or before **November 14, 2019**.

4. Plaintiffs' Motion for Preliminary Injunction [DE 7] is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 24th day of October, 2019.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
All Counsel of Record