UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(WEST PALM BEACH)

CASE NO. 19-CV-81069-WPD/WM

MATA CHORWADI, INC. d/b/a
HOMING INN, KIRIT SHAH,
individually, and DIPIKA SHAH,
individually,

      Plaintiffs,

v.

CITYOF BOYNTON BEACH,

      Defendant(s).

_____/

## CITY OF BOYNTON BEACH'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant, THE CITY OF BOYNTON BEACH ("City"), by and through its undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and Local Rules, hereby files this Motion for Summary Judgment as to all Counts of the Amended Complaint and Petition for Declaratory Judgment and Preliminary Injunction ("Amended Complaint") [DE 25], with an incorporated Memorandum of Law, as follows:

### FACTUAL BACKGROUND

1. The City has filed a Statement of Material Facts in accordance with Local Rule 56.1.

2. The City's Chronic Nuisance Code ("Code") provides that chronic nuisance properties have a significant adverse affect on the quality of life, safety, and health of the neighborhoods where they are located. SMF ¶ 2.

3.    The Code was enacted to address and reduce nuisance activities and/or nuisance conditions that disrupt the quality of life and repeatedly occur or exist at properties. SMF ¶ 3.

4.    The Code provides that the City will work in partnership with owners to address the negative results caused by chronic nuisance activities or conditions. SMF ¶ 6.

5.    Under the Code, a pattern of nuisance activities is found when the City has responded to three or more nuisance activities on the property within thirty days. SMF ¶ 7.

6.    The Code sets forth twenty-six categories of chronic nuisance activities including activities such as noise control, prostitution, dangerous dogs, trespass, disorderly intoxication, and gang activity. SMF ¶ 9.

7.    The Code also identifies as a nuisance activity two or more calls for service within a period of thirty calendar days to assist an individual who displays the symptoms of an overdose of a controlled substance. SMF ¶ 10.

8.    Plaintiff, MATA CHORWADI, INC. d/b/a HOMING INN ("Homing Inn") is a one hundred three room hotel property. SMF ¶ 15.

9.    Plaintiffs, KIRIT SHAH ("Kirit") and DIPIKA SHAH ("Dipika," Krit, and Homing Inn, shall hereafter be collectively referred to as "Plaintiffs") have owned and operated Homing Inn since July of 1998. SMF ¶ 16.

10. As a result of a series of calls for service to police and/or fire rescue for overdoses on Plaintiffs' property, on July 13, 2018, the City declared the property a chronic nuisance. SMF ¶ 17 through 20.

11. There is no dispute that City held duly noticed public meetings to enact the Code where residents and property owners were allowed to be heard on May 16, 2017, June 6, 2017 and June 19, 2018.  SMF ¶ 38.

12. Once the Homing Inn was identified as a potential Chronic Nuisance property, the City contacted the property owner and the property owner met with the entire Chronic Nuisance Team and discussed the issues the City found and what could be done to alleviate the situation. SMF ¶ 39

13. Several City officials met with Plaintiffs' counsel Manshi Shah in August of 2018 and went to the property with her on another occasion to discuss the requested work encompassed in the Agreement. SMF¶ 40.  Between the August 2018 meeting with Ms. Shah and the first hearing on December 19, 2018, there were continuing discussions between the City and Ms. Shah about the chronic nuisance issues. SMF ¶ 41.

14. The Code provides that if a property owner does not want to sign off on any proposed Nuisance Abatement Agreement, the City must seek a hearing before a Special Magistrate. SMF ¶48  The Code provides that at this hearing the City and property owner will be afforded the opportunity to present testimony under oath and call or cross examine any witnesses. SMF ¶48  Section 15-117 of the Code provides for the opportunity for appeal of any decision of the Special Magistrate. SMF ¶ 48

15. On December 19, 2018 a hearing was scheduled before the Special Magistrate. where Ms. Shah attended this hearing for the Plaintiffs.  At that hearing the Plaintiffs had the opportunity to dispute the Chronic Nuisance Notice before the Magistrate and had the opportunity to hear from and cross examine City employees regarding the chronic nuisance finding. SMF ¶ 42

16. At the end of the hearing, Ms. Shah voluntarily agreed to sign the Nuisance Abatement Agreement on behalf of the Plaintiffs. SMF ¶ 43

17. On December 26, 2018, Plaintiffs and the City entered into a Nuisance Abatement Agreement. Plaintiffs failed to comply with the Agreement as they did not take the necessary security measures to abate the nuisance activity on their property. SMF ¶ 20 through 22.

18. The City deposed Plaintiffs' employee, Moya Palmer ("Ms. Palmer"). SMF ¶ 23 and 24. Ms. Palmer testified that she has never instructed Homing Inn's guests not to call 911, and that, Plaintiffs have never instructed her to refrain from calling 911. SMF ¶ 25.

19. On March 10, 2020, the City deposed Kirit. SMF ¶ 26. Kirit testified that the Code does not prevent him from calling 911 and that he has never refrained from calling 911 because of the City's Code. SMF ¶ 28 and 29.

20. Kirit also testified that he has never instructed any of his employees or guests not to call 911. SMF ¶ 29 and 31.

21. The City also deposed Dipika in this matter. SMF ¶ 32. Dipika testified that she has never advised Homing Inn guests or employees not to call 911, nor has she ever instructed her employees to tell guests not to call 911. SMF ¶ 33 through 35.

22. Dipika has never avoided calling 911 because of the City's Code. SMF ¶ 36.

## PROCEDURAL BACKGROUND

23. On July 29, 2019, Plaintiffs filed a three count Complaint against the City and Officer Gregory Cafaro seeking damages for alleged violation of Plaintiffs' constitutional rights under the First and Fourteenth Amendments. Plaintiffs' Complaint also contained a claim for injunctive and declaratory relief.  [D.E. 1].

24. On October 24, 2019, this Honorable Court dismissed Count III of Plaintiffs' Complaint for Equal Protection. [D.E. 24].

25. Also on October 24, 2019, this Honorable Court denied Plaintiffs' request for Preliminary Injunction and found that "[u]nder the Code, there is no penalty for Plaintiffs calling 911 nor is there a direct penalty on Plaintiffs' patrons for making 911 calls." [D.E. 24, Page 13]

26. On November 14, 2019, the Plaintiffs filed their Amended Complaint which consists of Count I- Rights of Speech pursuant to the First Amendment of the U.S. Constitution and Article I, Section 4 and 5 of the Florida Constitution; and Count II – Procedural Due Process under the Fourteenth Amendment of the U.S. Constitution and Article 1, Section 9 of the Florida Constitution. Plaintiffs' also seek injunctive and declaratory relief under their Amended Complaint. [D.E. 25].

27. On November 22, 2019, the City filed its Answer and Affirmative Defenses to Plaintiffs' Amended Complaint. [D.E. 27]. On December 8, 2019, Plaintiffs filed their Reply to the City's Affirmative Defenses. [D.E. 34].

28. On April 13, 2020, this Honorable Court dismissed the Officer Gregory Cafaro from this lawsuit. [D.E. 44].

29. The parties have engaged in discovery on the existing claims, and the facts are now sufficiently developed to allow for the Court's consideration of this Motion.

## MEMORANDUM OF LAW

### I.      SUMMARY OF ARGUMENT

The Plaintiffs cannot meet their burden of proof as to Counts I and II of the Amended Complaint. There is a complete absence of record evidence demonstrating that the Code has restricted, burdened, or effected Plaintiffs', Plaintiffs' guests, or anyone else from exercising

their First Amendment right to petition the police. As detailed below, the City believes that this Honorable Court should analyze the constitutionality of the Code under the intermediate scrutiny *O'Brien* test because the Code is content neutral and regulates conduct, not speech.  Under the *O'Brien* test the Court analyzes (1) whether the regulation is within the constitutional power of government to enact; (2) whether the regulation furthers an important or substantial government interest; (3) whether the government interest is unrelated to suppression of free expression; and (4) whether the restriction is no greater than is essential to furtherance of the government interest. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 296 (2000). The Code passes the *O'Brien* test because: (1) the City's police powers allow it to pass laws for the health and safety of the City and its citizens; (2) the City has a compelling interest in regulating the health and safety of the City and its citizens; (3) the City's interest in passing the Code is unrelated to Plaintiffs' allegation that the Code suppresses their right to petition the police; and (4) the record is devoid of evidence to support Plaintiffs' claim that the Codes restricts free speech.

Alternatively, if this Honorable Court finds that the Code is content based and is subject to strict scrutiny, then the Code is still constitutional. Under strict scrutiny, the law "must be narrowly tailored to promote a compelling government interest, and if a less restrictive alternative would serve the government's purpose, the legislature must use that alternative." *U.S. v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 804 (2000). As stated above, the Code was passed to regulate the health, safety, and quality of life of the City's citizens. The U.S. Supreme Court has held that protecting the health and safety of citizens is a compelling governmental interest. *See Wisconsin v. Yoder,* 406 U.S. 205, 215 (1972). Moreover, the Code provides a sufficient nexus between the stated government interest and the classification created by the ordinance, and is narrowly tailored to deal with the City's compelling interest.

There is no record evidence which support the Plaintiffs' claim that the Code infringes on Plaintiffs' free speech right to petition the police and the City is entitled to Summary Judgment in its favor.

With regard to the claims made in Count II there is simply no evidence to support any procedural due process violation.  It is undisputed that the Code was enacted after three duly noticed public hearings.  The language of the statute provides a process whereby the Plaintiffs could object to the Chronic Nuisance finding and these Plaintiffs participated in a full hearing before signing the Nuisance Abatement Agreement.  These Plaintiffs also were provided three hearings before the Magistrate where they could have presented some evidence to contradict the Notice of Violation, but failed to do so. As the Plaintiffs have failed to provide any evidence demonstrating a procedural due process violation, the City would be entitled to summary judgment as a matter of law.

## II.    SUMMARY JUDGMENT STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The Court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017).

A factual dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying the portions of the record that demonstrate the absence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).. If the movant shows that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to demonstrate that there are genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Summary judgment is proper when a plaintiff fails to prove an essential element of their claim. *Celotex*, 477 U.S. at 322–23.

### III.    THE CITY IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT I

#### A.  Law applicable to Count I – Rights of Free Speech

When considering a First Amendment challenge to a City Ordinance, the Court analyzes: whether the regulated conduct is protected speech; what level of scrutiny is applicable; and whether the regulation meets this standard of scrutiny. *DA Mortg., Inc. v. City of Miami Beach*, 486 F. 3d 1254, 1265-69 (11th Cir. 2007).

Courts analyze content neutral ordinances and ordinance which only have an incidental restriction on speech under to the intermediate scrutiny test. *DA Mortg., Inc.*, 486 F. 3d at 1266; *see also Ward v. Rock Against Racism*, 491 U.S. 782, 798-99 (1989). "Government regulation of expressive activity is content neutral so long as it *justified* without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791. Certain ordinances which are content-based receive intermediate scrutiny because they are "aimed at combating crime and other negative secondary effects," and not the content of speech. *City of Erie*, 529 U.S. at 291. Under the intermediate

scrutiny test, the ordinance is constitutional if it is narrowly tailored to serve a significant government interest and it leaves open ample alternative channels of communications. *Id.*

Government regulation of speech is content based, and is thus subject to strict scrutiny, if a law applies to particular speech because of the topic discussed or message expressed. *Marin v. Town of Southeast*, 135 F.Supp. 3d 548, 565 (S.D. NY 2015). Under strict scrutiny, the law "must be narrowly tailored to promote a compelling government interest, and if a less restrictive alternative would serve the government's purpose, the legislature must use that alternative." *U.S.*, 529 U.S. at 804. The government does not need to present scientific or statistical proof in order to demonstrate that legislation serves some compelling interest. *State v. J.P.*, 907 So.2d 1101, 1116-17 (Fla. 2004).

The scope of the Florida Constitution's protection of free speech is the same as is required under the First Amendment, thus, Florida courts apply the principles of free speech set forth in the decisions of the United States Supreme Court. *Dep't of Educ. v. Lewis,* 416 So. 2d 455, 461 (Fla. 1982).

### A.   *Analysis Under the Intermediate Scrutiny Test*

"If the purpose of a law regulating conduct is aimed at the conduct itself, rather than at the message conveyed by that conduct, the regulation is subject to the lesser scrutiny given to content-neutral restrictions." *United States v. Swisher*, 811 F.3d 299, 312 (9th Cir. 2016); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (holding that if governmental purpose in regulating expression is unrelated to suppression of expression, then regulation need only satisfy less stringent, content neutral *O'Brien* standard for evaluating the restriction.). Under the *O'Brien* intermediate scrutiny test, the Court inquires: (1) whether the regulation is within the constitutional power of government to enact; (2) whether the regulation furthers an important or

substantial government interest; (3) whether the government interest is unrelated to suppression of free expression; and (4) whether the restriction is no greater than is essential to furtherance of the government interest. *City of Erie*, 529 U.S. at 296.

### i.   The Code should be analyzed under the O'Brien test.

The Code is content neutral because it does not regulate messages, it regulates conduct. Specifically, the Code was enacted to address and reduce nuisance activities and/or nuisance conditions that disrupt the quality of life and repeatedly occur or exist at properties. SMF ¶ 3. The Code contains twenty-six categories which are defined as "Nuisance Activities." SMF ¶ 9. Nuisance Activities include, but are not limited to violations of: prostitution, discharge of firearms in public, sexual offender residency prohibition, criminal mischief, theft, dealing in stolen property, and two or more calls for service within a period of thirty days to the same property to assist an individual who displays the symptoms of an overdose of a controlled substance. SMF ¶ 9. If a property has a pattern of nuisance activities then the City may declare that property a chronic nuisance.  SMF ¶ 11. A pattern of nuisance activity exists when the City has responded to at least three calls of nuisance activities at the property within thirty days. SMF ¶ 7. Once a property is declared a chronic nuisance, the City presents the owner of the property with a Nuisance Abatement Agreement which details corrective actions the owner must take to remedy the nuisance activity. SMF ¶ 12.  If the property owner complies with the Nuisance Abatement Agreement for a year, then the City will rescind its Declaration of Chronic Nuisance by issuing a Notice of Compliance.  SMF ¶ 13. The Code should be analyzed under the *O'Brien* test because it is content neutral as it does not regulate speech but rather it regulates a property owner's failure to correct a pattern of nuisance activities at a particular real property.

Notably, this Honorable Court has previously held that "[u]nder the Code, there is no penalty for Plaintiffs calling 911 nor is there a direct penalty on Plaintiffs' patrons for making 911 calls." [D.E. 24, Page 13]. The Court also held that the "City's Code does not prevent the provision of emergency services to overdose victims nor does it prohibit potential overdose victims or Plaintiffs from calling 911." [D.E. 24, Page 13]. The Code should also be analyzed under the *O'Brien* test because any alleged restriction on free speech is incidental at most.

### ii.     The Code passes the O'Brien test.

The Code intends to deal with the significant adverse effect on the quality of life, safety and health of the neighborhoods where chronic nuisance properties are located. SMF ¶ 1 and 2. The Code is within the constitutional power of the City to enact pursuant to the City's police powers. *See City of Erie*, 529 U.S. at 296 (holding that, the City of Erie's efforts to protect public health and safety are clearly within the city's police powers.). The Code also furthers an important and substantial government interest. *See Wisconsin,* 406 U.S. at 215 (holding that the government has a compelling interest to protect public health, safety, or welfare); *Carey v. Brown*, 447 U.S. 455, 471 (1980) ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society."). Accordingly, the Code passes the first two prongs of the *O'Brien* test.

The City's interest is unrelated to Plaintiffs' allegations of suppression of free expression. In *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000), the Court analyzed a First Amendment challenge to a city ordinance regulating nude dancing under the *O'Brien* test. The Court found that the City of Erie's interest in combating harmful secondary effects associated with nude dancing was unrelated to suppression of free expression. *Id*. at 299. Similarly, in the case at bar, the City enacted the Code to combat the significant adverse effect on the quality of life, safety

and health of the neighborhoods where chronic nuisance properties are located. SMF ¶ 2. The City's interest is unrelated to the alleged suppression of free speech, that the Code places an undue burden on Plaintiffs' and Plaintiffs' guests' right to petition peace officer/emergency assistance. [D.E. 25, Page 20].

Lastly, the restriction on free speech allegedly imposed by the Code is no greater than is essential to further the City's interest. The Code regulates conduct, and the Plaintiffs have failed to provide any evidence that show that the Code restricted the Plaintiffs' or their guests' free speech. The record is devoid of evidence to support Plaintiffs' contention that the Code has had a chilling effect on Plaintiffs' or their guests' ability to seek peace officer/emergency personnel assistance. [D.E. 25, Page 18].

Ms. Palmer, Kirit, and Dipika all testified that they never instructed Homing Inn's guests not to call 911. SMF ¶ 25, 31, and 33. Ms. Palmer testified that when she asked, Kirit told her that she was allowed to contact 911. SMF ¶ 26. Both Dipika and Kirit testified that they have never instructed their employees not to contract 911. SMF ¶ 30 and 34. Both, Kirit and Dipika also testified that the Code does not prevent them from calling 911. SMF ¶ 28 and 36. The record is devoid of evidence to support Plaintiffs' allegations that the Code restricts free speech. Accordingly, the Code is constitutional as it passes the *O'Brien* test.

No genuine dispute as to any material fact exist and the City is entitled to judgment in its favor as a matter of law because Plaintiffs failed to adequately prove an essential element of their claim, namely that the Code creates an undue burden and chilling effect on Plaintiffs' and Plaintiffs' hotel guests' First Amendment right to free speech and to petition peace officer/emergency personnel assistance. [D.E. 25].

### B.  Analysis Under Strict Scrutiny Test

The City believes that the constitutionality of the Code should be analyzed under the intermediate scrutiny as detailed above. However, should the Court find that the Code is content based and subject to strict scrutiny, then Plaintiffs' claim also fail for the following reasons.

### i.      The City has a compelling government interest for the Code.

The Code was enacted to deal with the significant adverse effect on the quality of life, safety and health of the neighborhoods where chronic nuisance properties are located. SMF ¶ 1 and 2. The Supreme Court has held that compelling governmental interests are those that protect public health, safety, or welfare. *See Wisconsin,* 406 U.S. at 215; *Carey,* 447 U.S. at 471 ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society."). Accordingly, the City's interest in passing the Code is compelling.

### ii.     The Code is narrowly tailored to deal with the City's compelling interest.

The Code is narrowly tailored to deal with the City's compelling government interest. The Code was enacted to address and reduce twenty-six nuisance activities which the City found create a health, safety, and quality of life concern when a property owner fails to take corrective actions to abate the repeated nuisance activities on the property. SMF ¶ 3 and 9.

The Code is narrowly tailored to  reduce or eliminate the amount of nuisance activities in the City. Under the Code, once a property is declared to be a chronic nuisance, its owner is required to take corrective measures to reduce or eliminate the repeated nuisance activity on the property. SMF ¶ 12. The Code is narrowly tailored to achieve the City's compelling interest because it ensures that property owners reduce unsafe conditions on their property. There is a

sufficient nexus between the stated government interest and the classification created by the ordinance, and that the Code is narrowly tailored to deal with the City's compelling interest.

### iii.     No less restrictive alternative would serve the City's purpose.

No record evidence exists to support the Plaintiffs' allegations that the Code restricts freedom of speech. As detailed above, Ms. Palmer, Kirit, and Dipika all testified that they never instructed Homing Inn's guests not to call 911. SMF ¶ 25, 31, and 33. Ms. Palmer testified that when she asked, Kirit told her that she was allowed to contact 911. SMF ¶ 26. Both Dipika and Kirit testified that they have never instructed their employees not to contract 911. SMF ¶ 30 and 34. Both, Kirit and Dipika also testified that the Code does not prevent them from calling 911. SMF ¶ 28 and 36. Accordingly, no less restrictive alternatives exist that would serve the City's purpose.

### iv.     Plaintiffs' "as-applied" challenge of the Code fails as a matter of law.

"An as-applied challenge ... addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (internal quotations omitted). "Because such a challenge asserts that a statute cannot be constitutionally applied in particular circumstances, it necessarily requires the development of a factual record for the court to consider." *Id.* The Supreme Court has sought to "dispel the notion that strict scrutiny is 'strict in theory, but fatal in fact.'"  *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 928 (C.D. Cal. 2018).

Plaintiffs challenge the constitutionality of the Code under the theory that it has the chilling effect of discouraging Plaintiffs and their guests from calling peace officer/emergency personnel assistance. [D.E. 25]. However, as detailed above, the record does not contain any evidence to support Plaintiffs' First Amendment Claim. Kirit and Dipika both testified that the Code has never prevented them from calling 911. SMF ¶ 28 and 36. Kirit and Dipika also

testified that they have never instructed their employees or their guests not to call 911. SMF ¶ 30 and 34. Ms. Palmer confirmed that Kirit told her she was permitted to call 911 and that she has never instructed guests to refrain from calling 911. SMF ¶ 26. The record is devoid of any evidence to support Plaintiffs' allegations that the Code restricted their First Amendment right, so Plaintiffs' claim that the Code is unconstitutional as applied fails as a matter of law.

### v.   *Plaintiffs' facial challenge of the Code fails as a matter of law.*

"[W]hen a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner. This is because a party who asserts a facial challenge to a statute is seeking not only to vindicate his own rights, but also those of others who may be adversely impacted by the statute." *DA Mortg., Inc.*, 486 F. 3d at 1262.  "As a general matter, courts strongly disfavor facial challenges." *Am. Fed'n of State. Cnty, and Mun. Emp. v. Scott*, 717 F.3d 851, 864 (11th Cir. 2013). "[F]acial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008)).

Plaintiffs allege that the Code is facially unconstitutional because it imposes penalties "…based on call to peace officers/emergency personnel for assistance." [D.E. 25, Page 19]. However, this Honorable Court has already correctly held, in its October 24, 2019 Omnibus Order on Motion to Dismiss and Motion for Preliminary Injunction, that "[u]nder the Chronic Nuisance Code, there is no penalty for Plaintiffs calling 911 nor is there a direct penalty on Plaintiffs' patrons for making 911 calls." [D.E. 24].

The Code does not contain a limitation on calls to peace officer/emergency personnel assistance, and it does not prevent anyone needing assistance for nuisance activity, or otherwise,

from contacting an officer/emergency personnel. The Code even provides an exception for calls made by an owner, operator, invitee, agent, or tenant of a property who is a victim of a crime. SMF ¶ 8. The Code also does not penalize for 911 calls. Under the Code penalties are only enforced against property owners who have chronic nuisance issues and fail to take corrective measures pursuant to a Nuisance Abatement Agreement. SMF ¶ 14. A property owner who complies with a Nuisance Abatement Agreement will have the classification of chronic nuisance rescinded, in such a situation no impediment on free speech would exist. SMF ¶ 13. Accordingly, the Code is valid on its face because it can be applied without infringing on constitutional rights.

#### IV.     THE CITY IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT II

The Plaintiffs' claims in Count II of the Amended Complaint (DE 25) also cannot survive as a matter of law. In this count, the Plaintiffs attempt to assert that the Code and its enforcement violate the Fourteenth Amendment Procedural Due Process Clause and "its Florida equivalent." (DE 25, Paragraph 140) The Plaintiffs assert that the City initiated proceedings against the Plaintiffs without providing any procedural protections. (DE 25, Paragraph 135). The Plaintiffs further assert that the Code does not give "an opportunity to contest the discretionary decision to characterize a hotel guest's emergency assistance call as an offense or the decision to enforce the Nuisance Policy against the Plaintiffs for calls made by hotel guests." (DE 25, Paragraph 136). The Plaintiffs assert that the City "threatened and forced the Plaintiffs to accept the characterization of "nuisance" by requiring the Plaintiffs, under duress, to sign the Agreement." (DE 25, Paragraph 138). However, the Plaintiffs ultimately voluntarily signed the Nuisance Abatement Agreement that is attached to the Complaint after a full hearing was provided to the Plaintiffs. (DE 25-2).

Despite the allegations in the Amended Complaint, the testimony and evidence in this case demonstrate that there is a complete absence of any evidence that the Plaintiffs were deprived of any notice of the enactment of the ordinance or the opportunity to be heard.  Further, the Code provides a process by which any property owner could contest a Notice of Violation which the Plaintiffs participated in prior to signing the Nuisance Abatement Agreement. Finally, as to the Plaintiffs' code matter, the evidence is overwhelming that the Plaintiffs participated in several meetings and hearings where they were given notice and the opportunity to be heard – and to contest - the City's finding of a Chronic Nuisance before any action was taken by the City to post Notice at the property.

A procedural due process violation is not complete "unless and until the state fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 123 (1990).  Only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under Section 1983 arise. *Id*.  At a minimum, the due process clause requires that persons deprived of life, liberty or property be afforded notice and an opportunity to be heard. *Armstrong v. Manzo,* 380 U.S. 545, 549, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In *First Assembly of God of Naples, Fla., Inc. v. Collier Cty*., 775 F. Supp. 383, 389 (M.D. Fla. 1991) the Court ruled that the parties challenging the county's comprehensive zoning ordinances did not have a viable procedural due process claim because they admitted that they were afforded notice and an opportunity to be heard but merely alleged that notice and hearing they were afforded did not meet state statutory requirements.

Mark Woods, the former Director of Community Standards for the City, testified that all property owners were provided with notice of the enactment of the Code.  SMF ¶ 37.  There is no dispute that City held three duly noticed public meetings to discuss the enactment of the Code

where residents and property owners were allowed to be heard on May 16, 2017, June 6, 2017 and June 19, 2018.  SMF ¶ 38 Mr. Woods testified that once the Homing Inn was identified as a potential Chronic Nuisance property, the City contacted the property owner and the property owner met with the entire Chronic Nuisance Team and discussed the issues the City found and what could be done to alleviate the situation before any official action was taken. SMF ¶ 39  On July 13, 2018, the City of Boynton Beach provided a Notice of Violation of the City's Chronic Nuisance Ordinance to the Plaintiffs and a proposed Nuisance Abatement Agreement seeking that the Plaintiffs increase camera coverage and lighting at the property and perform landscaping. SMF ¶ 17.

The Code provides that if a property owner does not want to sign off on any proposed Nuisance Abatement Agreement, the City must seek a hearing before a Special Magistrate. SMF ¶ 48  The Code provides that at this hearing the City and property owner will be afforded the opportunity to present testimony under oath and call or cross examine any witnesses. SMF ¶ 48 Section 15-117 of the Code provides for the opportunity for appeal of any decision of the Special Magistrate.  SMF ¶ 48  Thus, the Code language provides the Plaintiffs with a process by which they could present testimony and evidence to a Special Magistrate to dispute the City's determination of a Chronic Nuisance under the Code.  It also provides for review of any decision by a State appellate Court. [1]To determine whether a constitutional violation has occurred, it is necessary to ask what process was provided, and whether it was constitutionally adequate. "This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by

---

[1] The Plaintiffs have appealed the Magistrate's Order which is pending in the Circuit Court for Palm Beach County, Case # 2019 CA 0007120.

statute or tort law." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990) Here, it is undisputed that the Code provided such procedural safeguards and protections.

With regard to the Plaintiffs' Code case, the Plaintiffs initially refused to enter into the Nuisance Abatement Agreement. Mr. Woods testified that several City officials met with Plaintiffs' counsel in August of 2018 and went to the property with her on another occasion to discuss the requested work encompassed in the Agreement. SMF ¶ 40  Between the August 2018 meeting with Ms. Shah and the first hearing on December 19, 2018, there were continuing discussions between the City and Ms. Shah about the chronic nuisance issues. SMF ¶ 41 On December 19, 2018 a hearing was scheduled before the Special Magistrate. (DE 25-3).  Ms. Shah attended this hearing for the Plaintiffs. At that hearing the Plaintiffs had the opportunity to dispute the Notice before the Magistrate and had the opportunity to hear from and cross examine City employees regarding the chronic nuisance finding. SMF ¶ 42 At the end of the hearing, Ms. Shah agreed to sign the Nuisance Abatement Agreement on behalf of the Plaintiffs. SMF ¶ 43 After the Nuisance Abatement Agreement was signed by the Plaintiffs, there was no compliance. SMF ¶ 44 A second hearing was set on April 17, 2019.  Ms. Shah again appeared on behalf of the Plaintiffs. SMF ¶ 45,46 Again, the Plaintiffs had the opportunity to make arguments to the Magistrate; hear all evidence; present evidence and witnesses; and to cross examine all witnesses. The Plaintiffs did not present any witnesses or evidence at this hearing. SMF ¶ 47 After considering the testimony and evidence, on May 2, 2019, the Special Magistrate found that the Plaintiffs were in Violation of the Code. SMF ¶ 21, 22  "In the case of a procedural due process claim, the constitutional violation is not the deprivation of a protected interest in life, liberty, or property .... Rather, what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon* at 136.  Here, it is undisputed that the City held three

duly noticed public hearings before enacting the Code.  Also these Plaintiffs were not only afforded due process pursuant to the language of the statute, but also by way of three hearings whereby they could have presented some evidence to contradict the Notice of Violation, but failed to do so.  As the Plaintiffs have failed to provide any evidence demonstrating a procedural due process violation, the City would be entitled to summary judgment as a matter of law.

## V.    CONCLUSION

Based upon the foregoing, the City has demonstrated that there is the complete absence of a genuine factual dispute in this matter as there is simply no record evidence to support the Plaintiffs' claim as a matter of law.  Summary judgment is proper in this case as to Count I and Count II of the Amended Complaint [D.E. 25].

WHEREFORE, Defendant, THE CITY OF BOYNTON BEACH would respectfully request that this Honorable Court enter Summary Judgment in its favor as to Count I and Count II of the Amended Complaint [DE 25] and for such other and further relief as this Court deems just and proper.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **31st** day of **July, 2020**, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day to: **Manshi Kiritkumar Shah, Esq.**, manshishah24@gmail.com, 6525 Jessy Court, Lake Worth, FL 33467 in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

GOREN, CHEROF, DOODY & EZROL, P.A.
*Attorneys for Defendant*
3099 East Commercial Blvd., Suite 200

CASE NO. 19-cv-81069-WPD/WM

Ft. Lauderdale, Florida 33308
Phone: (954) 771-4500 / Fax: (954) 771-4923

By: */s/ Tracey A. DeCarlo*
 JAMES A. CHEROF
 Florida Bar No. 291846
 jcherof@gorencherof.com
 TRACEY A. DeCARLO
 Florida Bar No. 60259
 tdecarlo@gorencherof.com
 GAL BETESH
 Florida Bar No. 118405
 gbetesh@gorencherof.com

{00387971.2 306-9905423}